UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
DR. JOSEPH SHEEHAN,                             :
                               Plaintiff,     :
:           14-CV-3338 (JPO)
             -v-                             :
:           OPINION AND ORDER
TCI FUND MANAGEMENT (US), INC., *et al.*,   :
                          Defendants.  :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Joseph Sheehan brings this action against Defendants TCI Fund Management (US), Inc. ("TCI US"); The Children's Investment Fund Management (UK), L.L.P. ("TCI"); Talos Capital Limited ("Talos"); and three individuals associated with those entities: Chris Hohn, Martin Frass-Ehrfield, and James Hawks. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), contending (1) that this Court does not have personal jurisdiction over TCI and Talos, (2) that the Amended Complaint fails to state a claim against any Defendant, (3) that this Court should dismiss this action because Sheehan has been enjoined from prosecuting it by a British court, and (4) that the action is barred by the doctrine of *res judicata*. For the reasons that follow, Defendants' motion under Rule 12(b)(6) is granted on the ground of *res judicata*.

      Between 2006 and 2008, Sheehan entered into various loan agreements with the Anglo Irish Bank so that he could purchase shares in a private hospital.[1] The loans were secured by the shares. In 2013, the Anglo Irish Bank (since renamed) was placed into liquidation. The liquidators sought to sell Sheehan's debt to a third party. Concerned that sale to a "hostile party"

---

[1] These facts are taken from the Amended Complaint (Dkt. No. 20 ["Complaint"]) and are assumed to be true for purposes of this motion.

1

would not be in in his best interest, Sheehan sought to purchase the debt himself. (Complaint ¶ 16.) He approached Talos and TCI about financing the deal. They agreed to lend him 45 million Euros.

The parties memorialized the deal in a "loan commitment." (*Id.* ¶ 19.) The agreement required that Sheehan create a separate legal entity to acquire the loans and that he grant Talos and TCI specific security interests in his shares in the hospital. Later on, "Hawks, acting for TCI/Talos and under the direction of Hohn, falsely claimed that [the separate entity] defaulted on it [*sic*] obligations to Talos/TCI . . . and executed on the security held by Talos/TCI . . . ." (*Id.* ¶ 22.) Sheehan claims that "[u]pon information and belief, Defendants never intended to honor the Loan Commitment. Rather, they sought to deceive Dr. Sheehan, deprive Plaintiff of a business opportunity and to unjustly convert his assets for themselves." (*Id.* ¶ 25.)

Shortly after executing on their security, Defendants brought suit against Sheehan and several other investors in Her Majesty's High Court of Justice, Queen's Bench Division, Commercial Court ("ECC"). (*See* Dkt. No. 42, Attachment 1, Transcript of English Opinion ["English Opinion"].) Among other relief, they sought a declaration that they "were not liable to the defendants for . . . enforcing security . . . [and] that the . . . agreement was not part of a fraudulent scheme." (*Id.* ¶ 13.)

Sheehan did not appear in the English action. Instead, through counsel Lawrence Daniel O'Neill, he contended that was not subject to the jurisdiction of the ECC. "Neither [Sheehan]," O'Neill wrote, "nor the subject matter of this action is subject to the jurisdiction of the English courts and has not been since July 1776 . . . . We do not recognise the jurisdiction of the English courts in this matter and we are quite sure that the US Federal Courts will agree." (*Id.* ¶ 14.)

The proceedings in England went on without Sheehan. In those proceedings, Mr. Justice Flaux of the ECC found that "Mr. O'Neill was deliberately cocking a snook at th[e] court," (*id.*

2

¶ 36),[2] and held Sheehan's allegations in his complaint in this action to be "outrageous . . . , vexatious, oppressive and unfounded," (*id.* ¶ 48). He enjoined Sheehan from prosecuting this action. (Dkt. No. 39, Attachment 2, Final Anti-Suit Injunction.) Similarly, after a thorough hearing and in a well-reasoned opinion from the bench, he entered judgment against Sheehan, declaring that Defendants "have no liability to [Sheehan] under or in connection with the . . . Agreement, on the grounds alleged in the complaint in claim 14 CV 3338 as amended on 11 July 2014 before the United States District Court for the Southern District of New York, or otherwise." (Dkt. No. 39, Attachment 1, Final Judgment of the English Court.) Justice Flaux found that Sheehan was subject to his court's jurisdiction because Sheehan was a necessary party to the action and because he had personally guaranteed the loan agreement, which requires that all disputes related to the contract be litigated in the ECC. (Opinion ¶ 59.) Justice Flaux held specifically that the loan agreements had not been procured by fraud and that the Defendants had validly exercised their security rights. (*Id.* ¶ 47.)

The doctrine of *res judiciata* bars re-litigation of claims that have been decided on the merits in a valid final judgment before a court of competent jurisdiction. *E.g.*, *Media Technologies Licensing, LLC. v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003) (citing 18A WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE & PROCEDURE § 4427, at 4-5 (2d ed. 2002)). *Res judicata* ordinarily applies to the judgment of foreign courts. *E.g.*, *Guinness PLC v. Ward*, 955 F.2d 875, 893 n.14 (4th Cir. 1992) ("*Res judicata* effect has, of course, traditionally been afforded foreign country judgments entitled to recognition consistently with principles of comity."); *China Trade & Dev. Corp. v. M V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987).

---

[2] "Cocking a snook" is a derisive gesture made by putting one's thumb to one's nose, extending one's fingers outward in imitation of a rooster's crown, and shaking the fingers in mockery of the derided party. *E.g.*, THE PHRASE FINDER, UK, http://www.phrases.org.uk/meanings/cock-a-snook.html. The earliest known use of the phrase was in 1791. *Id.*

Declaratory judgments have preclusive effect. *See* WRIGHT, MILLER, & COOPER, *supra*. And the mere fact that a defendant does not appear in the action does not mitigate the judgment's preclusive effect. *See id.* § 4430. Sheehan contends only[3] that *res judicata* does not apply because (1) he was never subject to the jurisdiction of the ECC and (2) the default judgment against him was procured by fraud.

Although courts are generally presumed competent to adjudicate the limits of their own jurisdiction, where a defendant does not appear to contest jurisdiction he may still contest it later to defeat preclusion. *See Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). The mere fact that Justice Flaux determined that Sheehan was subject to the ECC's jurisdiction, then, does not preclude this Court from concluding that he was not. If Sheehan was not subject to suit in England, the judgment entered against him there would lack preclusive effect here. Therefore, the first question for this Court is whether Sheehan was properly subject to the jurisdiction of the ECC.

Defendants contend that Sheehan was subject to ECC jurisdiction because he signed an agreement containing a choice-of-forum clause designating the ECC as the exclusive forum for all claims related to the loan agreement. Sheehan contends (1) that he was not a party to that agreement (his separate entity was) and (2) that the agreement was procured by fraud and is not enforceable. Sheehan's first contention is without merit because the agreement clearly contains his *personal* guarantee as well as that of his company. (*See* Dkt. No. 25, Houck Decl. Ex. 1, at 14, 59.) His second contention is without merit because, even if the loan commitment were

---

[3] In his response to Defendants' motion to dismiss, Sheehan presses these arguments to invalidate the English injunction against him. The final English Judgment, though, did not issue until just before Defendants' Reply was due. As such, Defendants did not raise the specific ground of *res judicata* until their Reply. More than three weeks have passed since Defendants raised this issue and Sheehan has neither responded nor asked for leave to file additional papers.

obtained by fraud—a contention that Justice Flaux found to be "outrageous" (Opinion ¶ 48)—Sheehan does not allege that the choice-of-forum clause was obtained by fraud. Sheehan was subject to the jurisdiction of the ECC.

Next, Sheehan contends that the ECC judgment was obtained "based upon ex-parte and misleading representations by Defendants." (Dkt. No. 33, Plaintiff's Memorandum of Law, at 23.) But he does not specify what those misleading representations were. And they were only made *ex parte* because Sheehan declined to appear to challenge them. This is woefully insufficient to allege that the judgment was procured by fraud. Accordingly, this action is dismissed as barred by *res judicata*.

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted. The Clerk of the Court is directed to close the motions at docket numbers 23 and 35 and to close this case.

SO ORDERED.

Dated: December 16, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge